J-A27018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID GREECE, | : | |
| | : | |
| Appellant | : | No. 1528 WDA 2013 |

Appeal from the Judgment of Sentence Entered August 29, 2013,
In the Court of Common Pleas of Westmoreland County,
Criminal Division, at No. CP-65-CR-0000587-2011.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:            **FILED JANUARY 22, 2015**

This is an appeal by David Greece, Appellant, from the judgment of sentence entered by the Court of Common Pleas of Westmoreland County following a bench trial.  For the reasons that follow, we affirm Appellant's convictions, vacate the judgment of sentence, and remand for resentencing.

The charges against Appellant arose from a joint investigation by Westmoreland County Detective Tony Marcocci and Pennsylvania State Police Trooper Joshua Giran regarding suspected cocaine-trafficking activities of Appellant in and around Westmoreland County.  N.T., 10/7/11, at 107, 119.  On January 27, 2011, following the execution of search warrants, the police arrested Appellant and charged him with possession of cocaine, possession with intent to deliver cocaine, and possession of drug

paraphernalia. Appellant filed timely *omnibus* pretrial motions including several motions to suppress evidence. The trial court held a hearing on October 7, 2011, and denied the motions to suppress on February 17, 2012.[1] In the interim and with defense counsel's consent, the Commonwealth amended the information in August 2012 to include two additional charges of possession with intent to deliver cocaine and one count each of corrupt organizations and dealing in proceeds of unlawful activities. Motion to Amend Information, 8/14/12. Appellant proceeded to trial by stipulated facts "in that all issues for appeal arose from the suppression hearing and suppression motion . . . ." Appellant's Brief at 10.

The stipulated record of facts provides as follows:

[THE COMMONWEALTH]: If witnesses were called to testify for the Commonwealth in this case, they would testify as follows.

1. On January 27, 2011, police officers, armed with search warrants, entered the following residences.

A. 112 Tomato Farm Road, Unity Township.

B. 311 Twin Lakes Road, Unity Township.

C. 207 Klaka Road, . . . Mount Pleasant Township.

Residence A was occupied by Patricia Toscano. At this residence, police would testify they found approximately 1,170 grams of cocaine.

---

[1] The trial court inadvertently dated its order February 17, 2011.

Patricia Toscano would testify this cocaine belonged to David Greece and she purchased the cocaine on his behalf and at his direction. She would also testify that for a period of approximately ten months prior to January 27th, she would purchase cocaine on David Greece's behalf and with his money, and deliver the cocaine that she purchased to him. Sometimes she would store the cocaine at her residence. Toscano would testify that the cocaine she purchased for Greece was divided into eighths of a kilogram, each of which costs $5,250.00. Toscano purchased between four eighths and seven eighths of a kilo each time. These purchases occurred on average every three weeks between March of 2010 and January of 2011.

At residence B, which is occupied by David and Paula Greece and which is in close proximity to residence A, police would testify that they found 9.79 grams of cocaine and approximately $16,360.00 in cash. In addition, in excess of 35 firearms, loaded and unloaded, were also found at the Greece residence.

At residence C, which was occupied by David Greece's daughter and son-in-law, Danette Klejka, . . . and John Klejka, police seized $115,720.00 in cash. This money, according to his daughter, Danette Klejka, was money she was holding for her father.

Police stopped David Greece, who was operating a Cadillac Escalade, and seized from him two loaded firearms.

Police also stopped Paula Greece, who was operating a Chevrolet pick-up truck. In her purse inside the pick-up, police seized a loaded firearm, 55.5 grams of cocaine, and $2,045.00 in United States currency.

Paula Greece would testify that the cocaine found in her purse belonged to her husband, David Greece, and that she intended to deliver it to another person that morning, and that she was aware that David Greece was selling cocaine.

The quantities of cocaine referred to previously were sent to the State Police Crime Lab where it was confirmed that they were in fact cocaine.

Both Paula Greece and Patricia Toscano would also testify that they expected to receive consideration in exchange for their testimony.

It's my understanding the defendant would call no witnesses.

THE COURT: And did you put on the record who the police officers are that would be testifying to those facts?

[THE COMMONWEALTH]: They would be not limited to, but they would include Detective Tony Marcocci and Trooper Josh Giran . . . . If it were a full blown trial it would be a multitude of police officers but—

THE COURT: Those facts that you just gave me, those police officers would be able to testify to those. You would have other people to corroborate that.

[THE COMMONWEALTH] That would be fair to say.

THE COURT: Is this your understanding, [defense counsel?]

[DEFENSE COUNSEL]: Yes, Your Honor, that's my understanding. As the court said, while we stipulate if those witnesses were called they would so testify, we are including this testimony would not be true.

* * *

[THE COMMONWEALTH]: [Patricia Toscano] would testify that she would procure it for Mr. Greece, either bring it to him at his residence or sometimes store it at his residence for him, but she was not the one who was actually selling it to others. She was buying it for him which is still a drug transaction.

THE COURT: And also Detective Marcocci has testified previously for many courts as an expert witness to the fact that certain things would indicate that this was possession with intent to deliver, the amount of cash and so forth, correct?

> [THE COMMONWEALTH]: Correct. In addition to the testimony of the two accomplices and the co-conspirators, I believe that there wouldn't be any opposition to that being included in the stipulation.
>
> [DEFENSE COUNSEL]: No.

N.T. (Trial), 8/29/13, at 8–13. The trial court convicted Appellant on all counts and sentenced him on August 29, 2013, to a mandatory minimum sentence of five to ten years of imprisonment. Appellant filed this timely appeal. In compliance with the trial court's Pa.R.A.P. 1925 order, Appellant filed his concise statement of errors complained of on appeal on October 11, 2013. On January 8, 2014, the trial court filed a statement pursuant to Pa.R.A.P. 1925 (a)(1) indicating that the reasons for the order giving rise to the notice of appeal are found in the suppression opinion filed on February 17, 2012.

> Appellant raises the following two issues on appeal:
>
> I. Whether the searches of 112 Tomato Farm Road were carried out in violation of the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution?
>
> II. Whether the search warrant for 311 Twin Lakes Road, and vehicles, etc., related thereto was executed in violation of the Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution, and violated particularity and probable cause requirements as well?

Appellant's Brief at 3 (full capitalization omitted).

In reviewing the denial of a motion to suppress, we must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Harrell*, 65 A.3d 420, 433 (Pa. Super. 2013) (citation omitted). Where the suppression court finds in favor of the prosecution, as here, our scope of review is limited. "[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Smith*, 77 A.3d 562, 568 (Pa. 2013). Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn from them are in error. *Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013). It is a well-settled principle that appellate courts must defer to the credibility determinations of the trial court, which observed the demeanor of the witnesses and heard them testify. *Commonwealth v. Khalifah*, 852 A.2d 1238, 1240 (Pa. Super. 2004).

Appellant's first issue relates to the search of the trailer at 112 Tomato Farm Road, which was where Patricia Tuscano lived. The suppression court summarized the testimony at the suppression hearing explaining the relationship between Tuscano and Appellant and Appellant's status in relation to the Tomato Farm Road property, as follows:

The Commonwealth presented the testimony of Patricia Tuscano, the resident of 112 Tomato Farm Road. The parties agree that [Appellant] owns the trailer in which Tuscano lived, and that [Appellant] and his wife pay rent to a third party for the land on which the trailer sits, and that the trailer is across the street from [Appellant's] residence at 311 Twin Lakes Road. Tuscano admitted that she had a very close relationship with [Appellant] and his wife, and that they in fact had acted as her guardians, and that she called them "mom" and "dad." (ST 34-35, 66). She indicated that [Appellant] had a key to her trailer, and although there was no written lease in effect, she paid rent regularly to [Appellant] and had resided in the trailer from sometime in the summer of 2010 until February or March, 2011. (ST 36-37, 55-56, 66, 76). Tuscano testified that her residency at the trailer was approved by the land owner, one Mrs. Alexander. (ST 67). [Tuscano] testified that her brother also resided at the trailer with her for a brief time, and that while [Appellant] may have expressed concerns about certain individuals coming to the trailer, it was up to her to make such decisions. (ST 88-89). Tuscano acknowledged that [Appellant] stored tools for maintenance of the trailer at the trailer, but kept no personal items there (ST 35-36, 71, 74-75). She also acknowledged that, with her permission, [Appellant] stored large quantities of cocaine at her trailer. (ST 71-72, 90-92).

Paula Greece testified that she and her husband, the defendant, owned the trailer in which Tuscano lived, that they were Tuscano's landlords, that Tuscano's brother also lived there for a period of time, that they (the Greeces) kept tools, paint and other cleaning materials at Tuscano's trailer but that they kept no personal items there, no[r] had they ever slept there. (ST 56-59). They viewed the trailer as a source of income, and, although they owned the trailer, they considered it Tuscano's home. (ST 59-60). Paula Greece said it was neither her home, nor her husband's home. (ST 60).

Suppression Court Opinion, 2/17/12, at 11–12.

Appellant makes three arguments regarding the Tomato Farm Road search. Appellant asserts that the "actual question" before this Court "is

whether [A]ppellant's expectation of privacy has been established 'in light of all the surrounding circumstances,'" citing **Commonwealth v. Bostick**, 958 A.2d 543 (Pa. Super. 2008), in support. Appellant's Brief at 17. In making this claim, Appellant advances his disagreement with the suppression court's finding that Appellant did not have a reasonable expectation of privacy in the trailer on the property, and he focuses upon his status as a landlord, because he owns the trailer. In support, Appellant cites **Commonwealth v. Tobin**, 828 A.2d 415 (Pa. Cmwlth. 2003), and **Simpson v. City of New Castle**, 740 A.2d 287 (Pa. Cmwlth. 1999). He describes himself as a "quasi-landlord," maintaining that as such, he had a reasonable expectation of privacy to challenge the search on his property.

Appellant also argues that he is entitled to Fourth Amendment protection "on the basis of the property based analysis discussed in **United States v. Jones**, 132 S.Ct. 945 (2012)." Appellant's Brief at 25. He adds reference to **Florida v. Jardines**, ____ U.S. ____, 133 S.Ct. 1409 (2013), and **Commonwealth v. Arthur**, 62 A.3d 424 (Pa. Super. 2013). Appellant maintains that he had a possessory interest in the trailer; he owned it, had a key to it, had free access to it, and stored possessions there. Appellant's Brief at 28.

Appellant's third argument related to the Tomato Farm Road search asserts that the warrant was issued without probable cause. Appellant

contends that police used the identical affidavit for three separate searches,[2] maintaining that the affidavit failed to establish probable because: 1) it made no mention that drugs are at the trailer, 2) there was no suggestion to believe that there were drugs at the trailer, and 3) all of the information related to the trailer was undated, *i.e.*, there was no mention of when the referred-to events occurred.  Appellant's Brief at 32–33.

There is a two-part test a defendant must meet to establish a right to challenge the seizure of evidence.  He must first show that he exhibited a subjective expectation of privacy in the area to be searched.  Second, he must demonstrate that the expectation is one "that society is prepared to recognize as reasonable."  **Commonwealth v. Enimpah**, ___ A.3d ___, ___, 2014 WL 7369744 *3, 84 MAP 2013 (Pa. 2014)(filed December 29, 2014).

The suppression court underscored Paula Greece's testimony that 112 Tomato Farm Road was Patricia Toscano's home, not Paula Greece's or Appellant's residence.  Suppression Court Opinion, 2/17/12, at 12; N.T., 10/7/11, at 60.  Citing the holding in **Commonwealth v. Strickland**, 326 A.2d 379, 382 (Pa. 1974), that "a person is entitled to the protection of the Fourth Amendment at any residence where he has a reasonable expectation

---

[2] The three search warrants were for Appellant's residence on Twin Lakes Road, discussed *infra*, the residence on Klaka Road of Appellant's daughter, Danette Klejka, and Patricia Toscano's residence on Tomato Farm Road.

of privacy," the suppression court determined that the fact that Appellant did not reside at 112 Tomato Farm Road was not dispositive of the issue. *Id*. at 382; Suppression Court Opinion, 2/17/12, at 12. Rather, "the court must examine the totality of the circumstances in order to determine whether [Appellant] had a reasonable expectation of privacy in Tuscano's home that the law will protect." Suppression Court Opinion, 2/17/12, at 12.

This Court, in **Commonwealth v. Bostick**, 958 A.2d 543 (Pa. Super. 2008), where the question before us was whether exigent circumstances justified warrantless entry into a home, described the existence of an expectation of privacy as follows:

> An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances."

*Id*. at 552 (quoting **Commonwealth v. Viall**, 890 A.2d 419, 422 (Pa. Super. 2005)).

In the instant case, the suppression court concluded as follows:

> The testimony presented at the time of the suppression hearing, in addition to the testimony from the preliminary hearing that was also submitted for this court's consideration, clearly established that David and Paula Greece were Tuscano's

landlords, even though they considered her to be family. Tuscano did not live at the trailer rent-free; rather, she paid a regular monthly amount to [Appellant] in order to stay at the trailer. The 112 Tomato Farm Road location was nothing more than an investment income for [Appellant]. Unlike the defendant in *Strickland*, *supra*, who stayed at his grandmother's residence five nights per week, [Appellant's] contacts with the 112 Tomato Farm Road residence were occasional, irregular and temporary. He had a key to the residence, he stored items related to the maintenance of the trailer at that property, and he stored his quantities of cocaine at that residence.

Suppression Court Opinion, 2/17/12, at 13. The suppression court discounted the significance of Appellant's characterization of himself as a "quasi-landlord" and his reliance on **Tobin** and **Simpson**. The suppression court stated:

Here, though, the expectation of privacy of a landlord in his commercial property, as is claimed by [Appellant], goes far beyond that discussed in and recognized by *Tobin* and *Simpson*, *supra*. This court agrees that, had the searches in this case been tantamount to an administrative inspection of the structural integrity of the trailer to ensure compliance with local building codes and other ordinances, [Appellant's] expectation of privacy would have been reasonable. However, given the totality of the circumstances presented to this court, [Appellant's] assertion of such an expectation of privacy is not reasonable. "In general, to have a reasonable expectation of privacy, one must intend to exclude others and must exhibit that intent." *Commonwealth v. Hunter*. 963 A.2d 545, 553 (Pa. Super. 2008), *citing Commonwealth v. Lowery*, 451 A.2d 245, 247 (Pa. Super. 1982). [Appellant] has presented absolutely no evidence whatsoever to suggest that he had a reasonable expectation of privacy in the contents of the trailer such that society would sanction. Rather, the Commonwealth's evidence clearly establishes the opposite: that [Appellant] could not have had any reasonable expectation of privacy in the contents of that trailer. He did not live there, he did not control who was present there, he did not control who lived there, and in fact, Tuscano's

brother Frank also resided at the trailer for a period of time. Tuscano also testified that [Appellant] stored his cocaine at the trailer on and off the entire time that she lived there, and that she was a courier for [Appellant] in purchasing cocaine. (ST 69-10). Although [Appellant] clearly had free entry to the premises and conducted illegal activities on the premises, there is no evidence that [Appellant] received mail at the residence, or that he ate meals at the residence, that he did laundry at the residence or that he stayed overnight at the residence, or that he helped out with payment of the bills associated with the residence. *See, e.g.*, *Commonwealth v. Hunter*, 963 A.2d 545, 553 (Pa. Super.2008), *Commonwealth v. Bostick* 958 A.2d 543, 552 (Pa. Super. 2008), *Commonwealth v. Lowery*, 451 A.2d 245, 247 (Pa. Super. 1982).

Suppression Court Opinion, 2/17/12, at 14–15.

Thus, the suppression court concluded that Appellant had no reasonable expectation of privacy in Patricia Tuscano's residence at 112 Tomato Farm Road that either the United States or the Pennsylvania Constitutions are prepared to protect. In light of the totality of the circumstances and for the reasons cited above, we agree with the suppression court that Appellant did not show that he exhibited a subjective expectation of privacy in the Tomato Farm Road property and did not demonstrate that any expectation was one that society was prepared to recognize as reasonable and legitimate. **Gordon**, 683 A.2d at 259.

The suppression court focused exclusively on whether Appellant had a reasonable expectation of privacy in 112 Tomato Farm Road; it failed to address an alternative argument, however, that Appellant was entitled to Fourth Amendment protection on the basis of the property-based analysis

discussed in **United States v. Jones**, 132 S.Ct. 945 (2012),[3] and **Florida v. Jardines**, ___ U.S. ___, 133 S.Ct. 1409 (2013). In **Jones**, the Court considered "whether the attachment of a [GPS] tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search or seizure within the meaning of the Fourth Amendment." **Jones**, 132 S.Ct. at 947–948. Ultimately, under a "property-based approach," the Court held that such a trespassory intrusion constituted a search. **Id**. at 949. **Jones** established only that the question of whether a search or seizure occurred at all can be decided on both property-rights-based analyses and privacy interests; it did not establish "means independent of the **Katz** [**v. United States**, 389 U.S. 347 (1967)] expectation of privacy test to trigger one's Fourth Amendment . . . protections." Appellant's Brief at 27; **Jones**, 132 S.Ct. at 951.

We agree with the Commonwealth that this point was made in **Commonwealth v. Arthur**, 62 A.3d 424 (Pa. Super. 2013), where we reiterated that to prevail on a motion to suppress, the defendant must show that he has a privacy interest that has been infringed upon. **Id**. at 428 (citing **Commonwealth v. Burton**, 973 A.2d 428, 434 (Pa. Super. 2009)).

---

[3] Appellant fails to acknowledge that we have held that the holding in **Jones** is limited to Fourth Amendment jurisprudence and does not address Article 1, Section 8 of the Pennsylvania Constitution. **Commonwealth v. Burgos**, 64 A.3d 641, 652 (Pa. Super. 2013).

Moreover, the existence of a legitimate expectation of privacy is a threshold question. *Arthur*, 62 A.3d at 428 n.8. The *Arthur* Court stated, "[I]t is evident that while *Jones* may have reinvigorated the theory of trespass as a means to assert Fourth Amendment challenges, it did not negate the long-held principle that a defendant must have standing to challenge the search at issue and **must show some privacy interest**. *Arthur*, 62 A.3d at 430. We reject Appellant's claim.

Having concluded that the suppression court correctly determined that Appellant did not have an expectation of privacy in the Tomato Farm Road property and did not demonstrate that any expectation was one that society recognized as reasonable and legitimate, and thereby did not establish a basis for challenging the search at 112 Tomato Farm Road, we need not address Appellant's final argument assailing the search warrant. Assuming *arguendo* that Appellant established a basis for challenging the search, however, we nevertheless reject his contention. In that claim, Appellant challenges the search warrant for the property, contending it was issued without probable cause. Appellant's Brief at 30. Appellant maintains that the supporting affidavit failed to establish probable cause because: 1) it made no mention that drugs were at the trailer, 2) there was no suggestion why there was reason to believe that there were drugs at the trailer, and 3)

all of the information related to the trailer was undated, *i.e.*, there was no mention of when the referred-to events occurred.  Appellant's Brief at 12.

The **Arthur** Court, citing **Commonwealth v. Huntington**, 924 A.2d 1252 (Pa. Super. 2007), described the principles surrounding probable cause and the issuance of a search warrant as follows:

> In this jurisdiction, the question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test articulated in **Commonwealth v. Gray**, 509 Pa. 476, 503 A.2d 921 (Pa. 1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in **Illinois v. Gates**, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  See **Commonwealth v. Murphy**, 916 A.2d 679, 681–682 (Pa. Super. 2007) (discussing the Pennsylvania standard for issuing a search warrant).  The task of the magistrate acting as the issuing authority is to make a "practical, common sense assessment" of whether, "given all the circumstances set forth in the affidavit," a "fair probability" exists that contraband or evidence of a crime will be found "in a particular place."  **Id**. at 682.  A search warrant is defective if the issuing authority has not been supplied with the necessary information.  **Id**.  The chronology established by the affidavit of probable cause must be evaluated according to a "common sense" determination.  **Id**.

> **Huntington**, **supra** at 1255.  Further, "probable cause is based on a finding of the probability, not a prima facie showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." **Commonwealth v. Jones**, 506 Pa. 262, 484 A.2d 1383, 1387 (1984) (citations omitted).  "We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable

-15-

cause." ***Commonwealth v. Taylor***, 850 A.2d 684, 687 (Pa. Super. 2004), appeal denied, 580 Pa. 697, 860 A.2d 123 (2004) (citation omitted).

***Arthur***, 62 A.3d at 432.

In addition, our rules of criminal procedure outline the contents of a valid search warrant, providing, in pertinent part, as follows:

**Rule 206.  Contents of Application for Search Warrant**

Each application for a search warrant shall be supported by written affidavit(s) signed and sworn to or affirmed before an issuing authority, which affidavit(s) shall:

> (1) state the name and department, agency, or address of the affiant;
>
> (2) identify specifically the items or property to be searched for and seized;
>
> (3) name or describe with particularity the person or place to be searched;
>
> (4) identify the owner, occupant, or possessor of the place to be searched;
>
> (5) specify or describe the crime which has been or is being committed;
>
> (6) set forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are or are [sic] expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described;

Pa.R.Crim.P. Rule 206(a)(1–6). We conclude that the warrant application by the Commonwealth met this standard.

A review of the affidavit, in its entirety, stands in stark contrast to the review suggested by Appellant. Appellant makes repeated references to the "sole paragraph" describing Patricia Tuscano's residence in isolation. *See e.g.*, Appellant's Brief at 36–38. The law, however, requires a totality-of-the-circumstances analysis. ***Commonwealth v. Thompson***, 985 A.2d 928 (Pa. 2009).

Taken as a whole, the affidavit does not provide stale information, as asserted by Appellant. Appellant's Brief at 42–43. Rather, while some of the information provided dates back to 2007, the affidavit progresses in a chronology of information gathering. This culminated in a series of surveillance details over the three months prior to the issuance of the search warrant, controlled purchases of cocaine over the forty-five days prior to the issuance of the warrant, as well as a seventy-two-hour window during which Appellant was seen with cocaine. All of the information in the affidavit suggests that Appellant's cocaine trafficking operation was "protracted and continuous." ***Commonwealth v. Davis***, 480 A.2d 1035, 1040 (Pa. Super. 1984). The suppression court, although addressing the staleness claim as it related to the warrant for Appellant's residence, noted that the historical information concerning Appellant's suspected drug trafficking and the

ensuing investigation was "revived by the inclusion of other, more recent, information which clearly satisfie[d] the requisite timeliness requirement for a valid search." Suppression Court Opinion, 2/17/12, at 4. We agree.

Regarding Appellant's assertion of a lack of particularity, the Commonwealth concedes that the instant affidavit failed to list the Tomato Farm Road address. Commonwealth's Brief at 36. We reject Appellant's assertion that such omission is fatal to the warrant's validity. ***See Commonwealth v. Jefferson***, 412 A.2d 882 (Pa. Super. 1979) (failure to include address in affidavit of place to be searched was not fatal; common sense, reasonable conclusion to be drawn was that the defendant had hidden instrumentalities of the crime at his residence, thereby supporting existence of probable cause.). Appellant's contrary contention lacks merit.

Appellant's second issue relates to the warrant for his residence at 311 Twin Lakes Road and "vehicles, etc." and advances a claim asserting the absence of probable cause. Appellant's Brief at 49. Appellant first maintains that police violated the knock and announce rule when executing the warrant. Second, Appellant contends the police were overbroad and lacking in particularity in identifying the premises to be searched. Appellant's Brief at 62.

The Commonwealth maintains that the Special Emergency Response Team (SERT) fully complied with the strictures of the knock-and-announce

rule. It posits that police herein operated nearly identically to the police in *Commonwealth v. Doyen*, 848 A.2d 1007 (Pa. Super. 2004), where the question was whether the one to two minutes between the announcement of police presence and the forcible entry was reasonable. The suppression court in *Doyen* found that the time was reasonable and denied suppression. This Court agreed. *Id*. at 1012.

Pa.R.Crim.P. 207 embodies the knock-and-announce rule and provides as follows:

> **Rule 207. Manner of Entry Into Premises**
>
> (A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.
>
> (B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.
>
> (C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

The rule is designed to promote peaceable entry by affording fair warning and to safeguard legitimate privacy expectations to the degree possible. *Commonwealth v. Kane*, 940 A.2d 483, 490 (Pa. Super. 2007) (citing

***Commonwealth v. Morgan***, 534 A.2d 1054, 1056 (Pa. 1987)).  We have

stated:

> The procedural rule subsumes the Fourth Amendment requirement that officers must announce their presence upon the execution of a search warrant and provide residents with some chance to open the door.  ***See Hudson v. Michigan***, 547 U.S. 586, ___, 126 S.Ct. 2159, 2162–63, 165 L.Ed.2d 56 (2006) (quoting ***Richards v. Wisconsin***, 520 U.S. 385, 394, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997)).

***Commonwealth v. Sanchez***, 589 Pa. 43, 63, 907 A.2d 477, 489 (2006).

> There are exceptions to the knock-and-announce requirement "for situations presenting risks of physical violence . . . and where announcement would be futile." ***Id***.  In order to invoke an exception, police must only possess "a reasonable suspicion that one of these grounds is present." ***Id***.

> The circumstances under which the police do not have to knock and announce their purpose have been more fully delineated as follows:

> > Exceptions to the rule have developed on the basis of the reasonableness of the  police officers' conduct in particular cases, and include the following:  (1) the police need not engage in the futile gesture of announcing purpose when the occupants of the premises remain silent after repeated knocking and identification, (2) the police are virtually certain that the occupants of the premises already know their purpose; (3) the police have reason to believe that an announcement prior to entry would imperil their safety; and (4) the police have reason to believe that evidence is about to be destroyed.  These exceptions to the "knock and announce" rule fulfill the purpose of the rule in that entry is accomplished with a

> minimum of danger to officers and occupants or damage to the premises.
>
> ***Commonwealth v. Morgan***, 517 Pa. 93, 97, 534 A.2d 1054, 1056–57 (1987) (citations omitted).

***Kane***, 940 A.2d at 489–490.

In the case *sub judice*, the suppression court articulated its position regarding the Twin Lakes Road affidavit, warrant, and search as follows, and we adopt the reasoning as our own:

> In this case, Pennsylvania State Trooper Brian King testified that he participated in the serving and execution of the search warrant at 311 Twin Lakes Road. Trooper King, a member of the PSP SERT (Special Emergency Response Team), detailed the manner in which the warrant was in fact served. This specialized unit was used to execute the warrant at the Greece residence because law enforcement had information that there were numerous weapons, specifically automatic rifles, in the Greece home. (ST 126).
>
> A review of Trooper King's testimony clearly shows that the police complied with the requirements of Pa.R.Crim.P. Rule 207. Law enforcement arrived at the Greece property in two marked units displaying "POLICE" in large letters on the outside of the vehicles. As they approached the residence with lights flashing, police announced their presence loudly through the use of a PA system. Police announced, "Residents at 311 Twin Lakes Road, this is the state police. Surrender your residence immediately. We have a search warrant for the residence." (ST 129-130). The announcement was repeated constantly until the state police had entered the home.
>
> As they approached the home, police were notified that the entry had been "compromised," and that a white female (later identified as Paula Greece, [Appellant's] wife) had been located in the driveway at the back of the residence. Although Paula Greece was then secured, officers approached the door of the residence with a heightened sense of caution. As the

-21-

broadcasted announcements continued, police knocked on the door, announced, "State Police" several times with a waiting period in between the iterations of "State Police," and then the door was "breached." (ST 131). No one was inside the premises when the police made the entry. (ST132).

\* \* \*

Based upon Trooper King's testimony, it is clear that no violation of Pa.R.Crim.P. Rule 207 occurred in the execution of the warrant at 311 Twin Lakes Road.

Suppression Court Opinion, 2/17/12, at 9–10.

The Suppression Court also sufficiently addressed the requisite particularity of the warrant for 311 Twin Lakes Road, as follows:

A warrant is unconstitutional for its lack of particularity or specificity when it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize." **Commonwealth v. Bagley**, 408 Pa. Super. 188, 195, 596 A.2d 811, 814 (1991).

\* \* \*

A review of the search warrant in this matter clearly shows that it is not void as overbroad. The affidavit sets forth more than sufficient probable cause to believe that a cocaine trafficking business was being conducted from the Greece residence at 311 Twin Lakes Road, that [Appellant] was involved in that drug trafficking business, that in furtherance of that business, [Appellant] secreted large quantities of drugs and/or money on his property, that he had obtained a variety of vehicles and other items with proceeds of his drug trafficking in an effort to divert or disguise those proceeds, and that he was in possession of a large quantity and variety of weapons that he used in conducting his business. The sufficiency of the description in the warrant clearly justifies the authorization of the police to search for and seize the items listed in that portion of the warrant labeled "items to be searched and seized." *See, e.g.*, *Commonwealth v.*

> *Rivera*, 816 A.2d 282 (Pa. Super. 2003) (The warrant authorizing police to search for and seize evidence . . . including "any assets, paraphernalia or other materials related to the sale or use of" cocaine, was not . . . a general investigatory tool proscribed by Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment.).

Suppression Court Opinion, 2/17/12, at 7–8.

The particularity requirements for the contents of search warrants as expressed in the Pennsylvania Rules of Criminal Procedure require that every warrant shall "identify specifically the property to be seized" and "name or describe with particularity the person or place to be searched." Pa.R.Crim.P. 205 (2), (3). The comment to Rule 205 describes these requirements as

> intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and **should not be invalidated by hypertechnical interpretations.**

Comment, Pa.R.Crim.P. 205 (emphasis added). Thus, when an exact description of a particular item is not possible, a generic description may suffice. ***Commonwealth v. Gannon***, 454 A.2d 561 (Pa. Super. 1982). Like the suppression court, we conclude that the warrant authorizing the search of 311 Twin Lakes Road fully satisfied the particularity clause.

Finally, we address the sentence imposed in this case. While Appellant has not challenged the mandatory minimum sentence imposed herein, we note that challenges to an illegal sentence cannot be waived and may be

reviewed *sua sponte* by this Court. ***Commonwealth v. Melvin***, 103 A.3d 1 (Pa. Super. 2014). Issues pertaining to the United States Supreme Court's decision in ***Alleyne v. United States***, 133 S. Ct. 2151 (2013), directly implicate the legality of the sentence. ***Commonwealth v. Lawrence***, 99 A.3d 116 (Pa. Super. 2014).

As noted, Appellant proceeded to trial by stipulated facts, including the weight of the drugs recovered by the police. Based on that weight, the trial court imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508(a)(3). However, as recent case law holds that 18 Pa.C.S. § 7508 is unconstitutional in its entirety, we must vacate Appellant's sentence.

In ***Commonwealth v. Vargas***, ___ A.3d ___, 2014 PA Super 289 (Pa. Super. 2014) (filed December 31, 2014) (*en banc*), this Court vacated and remanded for resentencing without consideration of the mandatory minimum sentence imposed pursuant to 18 Pa.C.S. § 7508. Relying upon ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), ***Commonwealth v. Fennell***, ___ A.3d ___, 2014 PA Super 261 (Pa. Super. 2014) (filed November 21, 2014), and ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa. Super. 2014), we reiterated that section 7508 is "unconstitutional in its entirety." ***Vargas***, ___ A.3d at ___, 2014 PA Super 289 at *17. We explained our rationale as follows:

> [A]s was true with the statutes at issue in ***Newman*** and ***Valentine***, one particular subsection of 18 Pa.C.S.A. § 7508 is

clearly unconstitutional under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013). **See** 18 Pa.C.S.A. § 7508(b). In particular, Section 7508(b) contains the following unconstitutional burdens and procedures: it declares that the substantive, "aggravating facts" contained in Section 7508(a) are "not ... an element of the crime;" it declares that notice of either the "aggravating facts" or of the applicability of the mandatory minimum sentencing statute is "not ... required prior to conviction;" it declares that the applicability of the mandatory minimum statute "shall be determined at sentencing;" it declares that the Commonwealth need only prove the "aggravating facts" by a preponderance of the evidence; and, it declares that a judge—and not a jury—is to act as the fact-finder for purposes of determining the "aggravated facts." 18 Pa.C.S.A. § 7508(b). **Alleyne** rendered all of these burdens and procedures unconstitutional.

**Id**. We specifically noted in **Vargas** that even though the defendant in **Fennell stipulated** to the weight of the drugs, as in the instant case, the court erred in imposing the minimum sentence because 18 Pa.C.S. § 7508 is unconstitutional in its entirety. **Vargas**, ___ A.3d at ___, 2014 PA Super 289 at *17; **see also Commonwealth v. Cardwell**, ___ A.3d ___, 2014 PA Super 263 (Pa. Super. 2014) (filed November 25, 2014) (trial court violated **Alleyne** by imposing a mandatory minimum sentence based on the appellant's stipulation). Thus, we are compelled to vacate the mandatory sentence imposed herein.[4]

---

[4] At sentencing, the trial court also noted the applicability of the mandatory minimum sentence embodied in 42 Pa.C.S. § 9712.1. In **Newman**, this Court confronted a challenge to the mandatory minimum sentence found at section 9712.1 regarding the proximity between drugs and guns. The **Newman** Court concluded that the appellant's sentence was illegal in light of **Alleyne** and required this Court to vacate and remand for resentencing.

Having found no merit to the suppression issues raised in this appeal, we affirm Appellant's convictions. However, we vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing without consideration of any mandatory minimum sentence. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2015

---

***See also Commonwealth v. Ferguson***, ___ A.3d ___, 2015 PA Super 1 (Pa. Super. 2015) (filed January 5, 2015)(sentence vacated and remanded for resentencing without consideration of mandatory minimum sentence embodied in 42 Pa.C.S. § 9712).