COMMONWEALTH of Pennsylvania,
Appellant

v.

Curtis D. ARTHUR, Appellee.

Commonwealth of Pennsylvania,
Appellant

v.

Jasmine Demi Thompson, Appellee.

Commonwealth of Pennsylvania,
Appellant

v.

Ryan J. Ladson–Singleton, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.
Filed Feb. 20, 2013.

Adrienne D. Jappe, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Leigh P. Narducci, Blue Bell, for Arthur, appellee.

BEFORE: MUNDY, J., OTT, J., and PLATT, J.*

OPINION BY PLATT, J.

The Commonwealth appeals from the Order of March 16, 2012, which granted Appellees', Curtis D. Arthur, Jasmine Demi Thompson, and Ryan J. Ladson–Singleton,[1] motion to suppress the results

* Retired Senior Judge assigned to the Superior Court.

1. Jon D. Fox, Esquire, counsel for Appellee Ladson–Singleton did not appear at oral ar-

of a Global Positioning System (GPS) device.[2] We reverse and remand.

In March 2011, the Montgomery County Detectives' Bureau received information from two confidential informants that Appellee Arthur was selling drugs in the Norristown area. One of the informants, who had purchased drugs from Appellee Arthur, participated in a controlled buy. During the buy, the police observed that Appellee Arthur drove to the meet location in a blue Ford Taurus[3], with a Pennsylvania registration of HSD–8740.[4] Following the drug sale, the police observed Appellee Arthur return to the address listed on his driver's license, 528 Stanbridge Street, Norristown, Pennsylvania.

Based upon this information, Detective Michael Fedak sought an order pursuant to section 5761[5] of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S.A. § 5701–5728, authorizing the installation and use of a mobile tracking device (GPS) on the blue Ford Taurus. On March 11, 2011, the Court of Common Pleas of Montgomery County issued an order authorizing the placement and use of a GPS on the blue Ford Taurus. The GPS was installed on March 16, 2011.

In late March 2011, there was a second controlled buy from Appellee Arthur. Appellee Arthur drove to the buy in the blue Ford Taurus. This time he departed from 627 Sandy Street, Norristown, (an address at which Appellee Arthur was staying) and returned there after the buy. A few hours later, Appellee Arthur returned to the 528 Stanbridge Street address. As a result of both the second controlled buy and information obtained from the GPS device, the police obtained and executed search warrants for both addresses and for the blue Ford Taurus.

During the March 24, 2011 search of the Stanbridge Street address, the police seized numerous bags of marijuana found throughout the residence, a large amount of drug paraphernalia (several digital scales, empty plastic baggies, and a plate containing a razor blade and cocaine residue), five guns, and ammunition. At the time of the search, Appellee Ladson–Singleton was found at the residence. During the search of the Sandy Street address,

---

gument. Attorney Leigh Narducci, Esquire, who appeared on behalf of Appellee Arthur informed the Court that Appellee Ladson–Singleton was killed during the pendency of this appeal. By Order of January 11, 2013, this Court directed Attorney Fox to file a suggestion of death in accordance with Pa.R.A.P. 502(a). Attorney Fox has not complied with the Order. However, this Court has independently verified that Appellee Ladson–Singleton is deceased. Accordingly, pursuant to Pa.R.A.P. 502(a), we will quash and remand the appeal of the Commonwealth with respect to Appellee Ladson–Singleton to the trial court, so that the Commonwealth may take appropriate actions with respect to the charges pending against Appellee Ladson–Singleton.

2. The Commonwealth may take an appeal of right from an order that does not end the entire case if the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d); *see also Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 536, n. 2 (2001). The Commonwealth has filed such a certification in these cases.

3. The police were aware that Arthur normally drove a different vehicle, a green Volvo. As a result of their investigation, the police discovered that the green Volvo had been impounded.

4. The blue Ford Taurus was registered to a Faye A. Baker of 310 Stanbridge Street, Norristown, Pennsylvania.

5. At the time of use, Section 5761 allowed law enforcement to install and use a GPS device provided that it complied with the express requirements of the statute. *See* 18 Pa.C.S.A. § 5761.

the police seized eight bags of marijuana, various papers concerned with the drug business, three boxes of empty plastic baggies, almost $20,000.00 in cash, and a loaded gun. Appellee Arthur's girlfriend, Appellee Thompson, was found at the Sandy Street residence at the time of the search.

The police arrested and charged Appellees with criminal conspiracy, various firearms offenses, and various drug offenses. The Commonwealth joined the three cases prior to arraignment pursuant to Pa. R.Crim.P. 582. Appellees filed multiple motions to suppress. On February 13, 2012, the suppression court held a hearing, during which the Commonwealth presented the testimony of Detective Fedak. Appellees did not present any evidence. By Order of March 16, 2012, the suppression court granted the motions to suppress. The instant, timely appeal followed.[6]

On appeal, the Commonwealth raises the following issues for our review:

I. Whether the trial court erred in ruling that the [GPS] search in this case was unconstitutional under *United States v. Jones* [—— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)], even though it was conducted in full compliance with § 5761 of Pennsylvania's Wiretap Act?

II. In any event, whether the trial court erred in concluding that the warrantless GPS search in this case was unconstitutional under *Jones,* even though it was supported by probable cause?

Whether, to the extent that Pennsylvania law does not allow for a "good faith" exception to the exclusionary rule, the law should be changed to allow for a limited "good faith" exception where law enforcement acted in good faith reliance on 18 Pa.C.S.A. § 5761?

(Commonwealth's Brief, at 4).

 The Commonwealth challenges the suppression court's grant of Appellees' motions to suppress. When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry,* 943 A.2d 967, 969 (Pa.Super.2008), *appeal denied,* 598 Pa. 787, 959 A.2d 928 (2008). This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *See id.* In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* "our duty is to determine whether the suppression court properly applied the law to the facts of the case." *Commonwealth v. Ruey,* 586 Pa. 230, 892 A.2d 802, 807 (2006).

In reaching its decision to grant the motions to suppress, the suppression court relied on the United States Supreme Court's decision in *United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). (*See* Suppression Court Opinion, 4/17/12, at 4–11). In *Jones,* a joint task force of federal and District of Columbia law enforcement was investigating the defendant for trafficking in narcotics. *See Jones, supra* at 948. The task force sought and received a warrant authorizing the installation of a GPS device on the defendant's car in the District of Columbia within ten days of the warrant's issuance.

---

**6.** The Commonwealth filed a timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on April 12, 2012; the trial court issued a Rule 1925(a) opinion on April 17, 2012.

*See id.* However, the GPS device was not installed until the eleventh day and was installed in Maryland, not the District of Columbia. *See id.* The defendant was ultimately indicted, convicted and sentenced to life imprisonment based, in part, on information obtained via the GPS device. *See id.* at 948–49. On appeal, the United States District Court of Appeals for the District of Columbia Circuit reversed the conviction, finding that admission of evidence obtained from the warrantless[7] use of the GPS device violated the Fourth Amendment. *See id.* at 949. The United States Supreme Court agreed. The Supreme Court held that the placement of a GPS device on the defendant's car constituted a search. *See id.* at 949. Writing for the majority, Justice Scalia held that the formulation of what constitutes a search, as delineated in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), was incomplete. *See id.* at 953. In *Katz,* the Supreme Court stated that "the Fourth Amendment protects people, not places." *See Katz, supra* at 351, 88 S.Ct. 507. Justice Scalia explained that *Katz* supplemented but did not replace traditional jurisprudence that linked Fourth Amendment rights to property rights and thus protects individuals from government actions that constitute a trespass. *See Jones, supra* at 949–53. Thus, the majority held that while not all trespassory searches offend the Fourth Amendment, those that involve "persons, houses, papers, and effects" do invoke that protection, whether or not the individual had a reasonable expectation of privacy

under *Katz* in the item at the time the trespass took place. *Id.* at 953–54.

Keeping these principles in mind, we now turn to our analysis of the merits of the instant matter. Initially, we note that the suppression court treated Appellees Arthur and Thompson identically in analyzing the merits of their claim. (*See* Suppression Ct. Op., 4/17/12, at 4–11). This was error. To prevail on a motion to suppress, the defendant must show that he or she has a privacy interest which has been infringed upon.[8] *See Commonwealth v. Burton,* 973 A.2d 428, 434 (Pa.Super.2009) (*en banc*). *Burton* provides that:

> [t]he law relating to a defendant's standing and expectation of privacy in connection with a motion to suppress has been explained by our courts. A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy.... A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Id.* at 435 (citations omitted). However, with respect to the search of an automobile, "a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary

---

7. The Court considered the search warrantless because the original warrant had expired and only applied to the District of Columbia. *See Jones, supra.*

8. We note that the issue of whether the Appellees had a legitimate expectation of privacy, a

threshold question, was not addressed below and is not addressed in the appellate briefs. (*See* N.T. Suppression Hearing, 2/13/11, at 4–54; *see also* Appellant's Brief, at 18–55; Appellees' Brief, at 10–18).

matter, must show that he had a privacy interest in the area searched." *Id.* (citation and quotation marks omitted). The *Burton* Court explained that:

An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Id.* (citation omitted). While the Pennsylvania courts have not addressed the concept of legitimate expectation of privacy in light of *Jones,* several other state and federal courts have.[9]

In *United States v. Martinez–Turcio,* 2012 WL 4054875 (4th Cir. September 17, 2012), two of six defendants who were part of a drug trafficking ring, challenged the use of a GPS device, that had been placed on a van used as part of the narcotics operation, under *Jones.* *See Martinez–Turcio, supra* at *9. The Fourth Circuit held that where neither of the defendants owned the van and had not demonstrated that they had some legitimate expectation of privacy, they lacked standing to challenge the use of the GPS device pursuant to Jones. *See id.*

In *United States v. Shephard,* 2012 WL 3117513 (6th Cir. August 1, 2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 915, 184 L.Ed.2d 703 (2013), a co-conspirator in a narcotics operation argued that the use of

GPS information gained from a co-conspirator's vehicle violated his Fourth Amendment rights under *Jones.* *See Shephard, supra* at *5. The Sixth Circuit disagreed, flatly stating that *Jones* "did not create any new privacy right that would give [appellant] standing to contest the searches at issue." *Id.* The Sixth Circuit agreed with the government's contention that where the appellant did not own, drive, or occupy the vehicle at issue, he failed to demonstrate any legitimate expectation of privacy in the vehicle, and thus lacked standing to contest the use of the GPS device. *See id.; see also Bad v. Heaney,* 2012 WL 3984550, at *1 (D.Minn. September 11, 2012) (petitioner did not have standing under *Jones* to challenge attachment of a GPS device where the vehicle he was driving was owned by his employer, he used the vehicle for activities outside the scope of his employment, and the device was attached before the petitioner took possession of the vehicle); *U.S. v. Ramos,* 2012 WL 3307006, at *2 (D.Vt. August 13, 2012) (defendant lacked standing under *Jones* to compel information relating to the warrantless use of a GPS device on certain vehicles used in an investigation where she did not rent or own them); *U.S. v. Luna–Santillanes,* 2012 WL 1019601, at *5–6 (E.D.Mich. March 26, 2012) (denying a motion to suppress pursuant to *Jones* because two of the defendants lacked standing with respect to a vehicle solely occupied by a third defendant).

In *State of Arizona v. Estrella,* 230 Ariz. 401, 286 P.3d 150 (Ct.App.2012), the Court of Appeals engaged in a comprehensive analysis of *Jones.* *See Estrella, supra* at 152–54. In *Estrella,* law enforcement

---

9. "While we recognize that federal court decisions are not binding on this [C]ourt, we are able to adopt their analysis as it appeals to our reason." *Kleban v. Nat'l Union Fire Ins. Co.,* 771 A.2d 39, 43 (Pa.Super.2001) (citation omitted). Further, "[w]hile it is a truism that

decisions of sister states are not binding precedent on this Court, they may be persuasive authority[.]" *Commonwealth v. Nat'l Bank & Trust Co.,* 469 Pa. 188, 364 A.2d 1331, 1335 (1976) (citations omitted).

placed a GPS device to a van owned by Estrella's employer despite not obtaining a warrant. *See id.* at 151. The Court of Appeals initially found that Estrella had waived his right to challenge the search based upon a theory of trespass. Nonetheless they addressed the issue of a reasonable expectation of privacy in light of *Jones,* ultimately concluding that Estrella did not have a reasonable expectation of privacy because he did not provide any evidence that he had permission to drive the van or had any interest in it at the time when the device was attached. *See id.* at 153–54.

Thus, it is evident that while *Jones* may have reinvigorated the theory of trespass as a means to assert Fourth Amendment challenges, it did not negate the long-held principle that a defendant must have standing to challenge the search at issue and must show some privacy interest. While the cases discussed above are not Pennsylvania law, they are in conformity with Pennsylvania principles regarding standing and privacy. *See Burton, supra* at 435.

■ Here, Appellee Thompson did not own the car in question. Further, our review of the record has not shown that she had any possessory interest in the car, that she ever drove the car, nor was she a passenger in the car at the time of the installation of the GPS device. Therefore, we see nothing in *Jones* that would allow her to assert any property right that was trespassed upon by the government. *See Jones, supra* at 951–53. Further, Appellee Thompson has no legitimate expectation of privacy in a vehicle owned by a third party and solely used by a co-conspirator. *See Commonwealth v. Powell,* 994 A.2d 1096, 1107 (Pa.Super.2010), *appeal denied,* 608 Pa. 665, 13 A.3d 477 (2010) (appellant had no legitimate expectation of privacy in trunk of vehicle in

which he was passenger and which was registered to third person); *see also Burton, supra* at 436 (appellant had no reasonable expectation of privacy in vehicle he did not own and was using without authorization or permission of registered owner). Thus, because Appellee Thompson neither asserted a property right within the meaning of *Jones* nor demonstrated a legitimate expectation of privacy, the trial court erred in granting her motion to suppress. Accordingly, we reverse the order granting the motion to suppress as to Appellee Thompson and remand the matter for further proceedings.

Appellee Arthur presents a more complicated question with respect to a legitimate expectation of privacy. Early Fourth Amendment jurisprudence based upon the "trespass doctrine" was grounded in the notion of the "relative strength of the defendant's possessory interest in the items seized or the property searched." *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 460 (1983) (citations omitted). As discussed above, those courts who have applied *Jones* have been reluctant to extend its holding to individuals absent proof of ownership or a strong showing of a possessory interest in the vehicle in question. Further, Pennsylvania courts have been equally reluctant to find that an individual has a reasonable expectation of privacy absent a showing of ownership or express permission to borrow the vehicle. *See Powell, supra* at 1107; *see also Burton, supra* at 436. In *Commonwealth v. Maldonado,* 14 A.3d 907 (Pa.Super.2011), the Commonwealth appealed from the trial court's grant of a motion to suppress, in a case where the vehicle the defendant was driving at the time of the offense was owned by his live-in girlfriend. *See Maldonado, supra* at 911. This Court reversed, reiterating that it is the defendant's burden at a suppression hearing to

prove that he had a reasonable expectation of privacy in the vehicle. *See id.* at 911–12. This Court explained:

the deficit of evidence drives our determination in the present appeal. At the suppression hearing, [defendant] bore the burden of establishing that he had a reasonable expectation of privacy in the automobile. At the suppression hearing, the Commonwealth presented only the testimony of [the police officer], and [defendant] did not present any witnesses. The evidence elicited at that time establishes that the vehicle was owned by [defendant's girlfriend]. [The police officer] testified, on cross-examination, that [defendant] told him that [the vehicle owner] was his girlfriend and that they lived together at the address to which the vehicle was registered. However, there was no evidence that [defendant] had permission from [his girlfriend] to drive the car. When [defendant's] counsel asked [the police officer] whether [defendant] told him that [his girlfriend] had given him permission to drive her car, [the police officer] stated only that he did not recall asking [defendant] that question. Of note, although it appears that [the girlfriend] attended the suppression hearing, [defendant] did not call her to testify that she had given [him] permission to drive her car on the day in question.

The fact that [defendant and his girlfriend] might have lived together and had a romantic relationship does not foreclose the possibility that [defendant] was driving [her] vehicle without her knowledge or permission. For that reason, we conclude that [defendant] failed to establish an expectation of privacy in the vehicle he was driving, which he did not own, that was not registered to him, and for which he has not shown authority to operate. We therefore reverse the trial court's order granting [defendant's] motion to suppress.

*Id.* (internal footnotes, quotation marks, and citations omitted).

██ Here, the relationship between the owner of the car and Appellee Arthur is opaque. As in *Maldonado*, Arthur did not present any witnesses at the suppression hearing and did not cross-examine the police detective regarding permission to use the vehicle. The sole testimony regarding the vehicle occurred when, on cross-examination, counsel for the now-deceased Appellee Ladson–Singleton asked Detective Michael Fedak why he picked this particular vehicle to attach the GPS device to, and Fedak replied, "[b]ecause that was the vehicle Curtis Arthur utilized during controlled buy one . . ." (N.T. Suppression Hearing, 2/13/11, at 26–27). This simply is insufficient to demonstrate either a possessory interest in the vehicle within the meaning of *Jones* or a reasonable expectation of privacy in the vehicle. *See Maldonado, supra* at 911–912; *see also Commonwealth v. Caban*, 60 A.3d 120 (Pa.Super.2012) (finding that in order to demonstrate legitimate expectation of privacy at suppression hearing non-owners of vehicle must present evidence that they had permission to use car). Accordingly, the trial court erred in reaching the merits of Appellee Arthur's motion to suppress.

Moreover, even if we were to find that Appellee Arthur had demonstrated a reasonable expectation of privacy in the vehicle, we would reverse the suppression of evidence because the suppression court's application of *Jones*[10] was misplaced. We agree with the Commonwealth that the holding in *Jones* is limited to the finding

---

**10.** We note that the holding in *Jones* was limited to Fourth Amendment jurisprudence and did not address Article 1, Section 8 of the Pennsylvania constitution.

that the placement of a GPS device by the government on a private vehicle, without a warrant or some other judicial preclearance offends the Fourth Amendment. *See Jones, supra* at 949–54. The Supreme Court specifically declined to address what procedure was required or what degree of suspicion was required to support any such application.[11] *See id.* at 954. We have carefully reviewed *Jones,* and see nothing in it that would support the notion that, as in the instant matter, a GPS device placed onto a vehicle in full compliance with Section 5761 of Pennsylvania's Wiretap Act offends either the Fourth Amendment or Article 1, Section 8 of the Pennsylvania Constitution.

 In any event, even if a finding of probable cause were required for the issuance of a search warrant, the application by the Commonwealth met this standard. This Court set forth the principles surrounding probable cause and the issuance of a search warrant in *Commonwealth v. Huntington,* 924 A.2d 1252 (Pa.Super.2007), *appeal denied,* 593 Pa. 746, 931 A.2d 656 (2007), as follows:

In this jurisdiction, the question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test articulated in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (Pa.1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See [Commonwealth v.] Murphy,* 916 A.2d [679], 681–682 [ (Pa.Super.2007) ] (discussing the Pennsylvania standard for issuing a search warrant). The task of the magistrate acting as the issuing authority is to make a "practical, common sense assessment" of whether, "given all the circumstances set forth in the affidavit," a "fair probability" exists that contraband or evidence of a crime will be found "in a particular place." *Id.* at 682. A search warrant is defective if the issuing authority has not been supplied with the necessary information. *Id.* The chronology established by the affidavit of probable cause must be evaluated according to a "common sense" determination. *Id.*

*Huntington, supra* at 1255. Further, "probable cause is based on a finding of the probability, not a prima facie showing[,] of criminal activity, and [ ] deference is to be accorded a magistrate's finding of probable cause." *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383, 1387 (1984) (citations omitted). "We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." *Commonwealth v. Taylor,* 850 A.2d 684, 687 (Pa.Super.2004), appeal denied, 580 Pa. 697, 860 A.2d 123 (2004) (citation omitted).

 Here, Montgomery County Detective Fedak stated the following in the Affidavit of probable cause: he was a veteran police officer, with extensive experience and training in conducting drug investigations; and attested that in March 2011, two different confidential informants provided information that Appellee Arthur was selling drugs. (*See* Application for an Order Authorizing the Installation and Use of a Mobile Tracking Device, 3/11/11, at Exhibit A, 1–8). Arthur had a previous conviction for possession of a controlled

---

11. The original warrant in *Jones* was obtained pursuant to Federal Rule of Criminal Procedure 41, which specifically requires a showing of probable cause. *See* Fed.R.Crim.P. 41(d)(1).

substance with intent to deliver and had recently been arrested and charged with other drug-related offenses, although those charges had been dismissed. (*See id.* at 4–5). The first confidential informant had been purchasing large amounts of marijuana from Appellee Arthur on a weekly basis for approximately six months; and Fedak found the informant to be credible because the information provided was corroborated by the second confidential informant and by Fedak's own knowledge. (*See id.* at 5–6). The second confidential informant claimed that he/she had conversations with drug users who purchased marijuana from Appellee Arthur. (*See id.* at 6). This second informant had been a reliable informant for several years and his/her information had led to many arrests, and the seizure of firearms and many types of narcotics. (*See id.* at 6–8). Moreover, while under constant supervision of law enforcement, the first confidential informant made a controlled purchase of marijuana from Appellee Arthur during the first week of March 2011. (*See id.* at 8–10). Appellee Arthur arrived at the meet location in the vehicle at issue, which was registered to a third party. (*See id.* at 8–9). Following the purchase, police followed Appellee Arthur back to his address at 528 Stanbridge Street. (*See id.* at 9–10).

This information was more than sufficient to show that, under the totality of the circumstances, there was probable cause to believe that Appellee Arthur was using the vehicle to engage in drug trafficking, and that use of a GPS device would assist in the investigation and provide evidence of criminal activity. *See Commonwealth v. Clark,* 611 Pa. 601, 28 A.3d 1284, 1292 (2011) (probable cause existed for issuance of a warrant under the totality of circumstances, which included controlled buy of narcotics from the defendant that corroborated information supplied by confidential informant). It is evident that the Commonwealth had sufficient probable cause to justify the issuance of a warrant in this matter.

Thus, for the reasons discussed above, we find that neither Appellee Thompson nor Appellee Arthur demonstrated that they had either a possessory interest in the vehicle within the meaning of *Jones* or a reasonable expectation of privacy in the vehicle. Therefore, the trial court erred in reaching the merits of their motions to suppress. Further, even if Appellee Arthur had demonstrated such, the trial court erred in finding that the Commonwealth had not met its burden under *Jones.* Lastly, because of our disposition of the Commonwealth's first two issues, we need not address its contention regarding a "good faith" exception to the exclusionary rule. Accordingly, we reverse and remand for further proceedings consistent with this decision.

Order reversed as to Appellees Arthur and Thompson. Cases remanded. Appeal quashed as to Appellee Ladson–Singleton. Case remanded. Jurisdiction relinquished.