J-S06024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA ANDREW TRUNK | : | |
| | : | |
| Appellant | : | No. 1714 EDA 2019 |

Appeal from the Judgment Entered April 26, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006707-2016

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 12, 2020**

Joshua Andrew Trunk appeals the judgment of sentence entered following his jury convictions for two counts each of first- and third-degree murder and one count of possessing an instrument of crime.[1] Trunk challenges the sufficiency of the evidence, the weight of the evidence, and the trial court's decision to deny his motion to suppress evidence. Trunk's counsel has filed an **Anders**[2] brief and a petition to withdraw as counsel. We grant counsel's petition to withdraw and affirm the judgment of sentence.

The trial court set forth the relevant facts and procedural history of the case as follows:

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), and 907(a), respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

[Trunk] shot and killed his mother, Janice Trunk, and her boyfriend, Kevin Smith, on July 31, 2015, at approximately 10:15 p.m., while the couple was in bed in the apartment they shared with him in Ambler, Montgomery County. [Trunk] executed his mother by placing a 9 millimeter handgun close to her and shooting her twice in the head. He then shot Smith in the head.

The day before the killings [Trunk] unlawfully purchased a 9 millimeter firearm. About two months before the killings, he had told his mother in the presence of another person that he should kill her. He also told a close friend days before the killings that he believed his mother was out to get him and that either he or his mother had to die. The type of firearm [Trunk] purchased is capable of firing the bullets that were used in the killings.

[Trunk] fled to nearby Norristown after the killings, going to the home of a family that had known him since he was a child. He did not seem himself according to those who saw and spoke with him shortly after the killings. [Trunk] spoke with Lee Burke, a long-time friend, on the phone after the killings and told Burke in an angry tone that "he had to do it" and that he had killed someone. Cellular phone records show five calls from [Trunk] to a phone used by Burke between 10:18 p.m. and 11:27 p.m. on the night of the killings.

After arriving in Norristown, [Trunk] had a female friend drive him to Philadelphia. [Trunk] had a backpack with him that appeared to be full. He left the vehicle briefly after having the driver stop in the Hunting Park section of Philadelphia. When the two returned to Norristown, the friend saw that the backpack was unzipped and appeared to be empty.

After returning to Norristown, [Trunk] received a telephone call from an aunt telling him not to go home. He met up with his aunt and the two then proceeded to the scene of the crime. [Trunk] and his aunt agreed to accompany investigators to a local police station to be interviewed. [Trunk] did not mention his trip to Philadelphia during his statement and told investigators he did not possess a firearm.

The Commonwealth eventually charged [Trunk] with two counts of murder of the first degree, two counts of murder of the third degree and one count of possessing an instrument of crime. Prior to trial, [Trunk] moved to suppress his statement to police and certain physical evidence.

Trial Ct. Op., 8/7/19 at 1-3 (citations omitted).

The court held a hearing on Trunk's suppression motion at which Detectives Mitchell and Wittenberger testified. N.T. 4/20/17 at 25-53. The trial court found the detectives' testimony to be credible and aptly summarized it as follows:

Montgomery County Homicide Detective Wittenberger was investigating a double homicide on Forest Avenue in the Borough of Ambler.

He met that evening with Lieutenant Forzato at the scene to canvass the area.

[Trunk], his aunt, and her boyfriend arrived at the scene.

Detective Wittenberger introduced himself and asked them if they would come to Ambler Police Department for an interview. [Trunk] was not a suspect at that time. They said they would comply.

Wittenberger offered them a ride to the station. And [Trunk] and the aunt entered his vehicle of their own free will. No cuffs and no conversation during the approximate three-minute ride to the station. They exited the vehicle on their own.

Furthermore, the transporting vehicle was not a police-designed vehicle. For instance, there was no cage or glass separating the passengers. This was a normal sedan with no police . . . package.

[Montgomery County] Homicide Detective Bill Mitchell was at the Ambler Police Department at 3:01 a.m. with Ambler Detective Cassel waiting for [Trunk] and his aunt to arrive. Mitchell was the lead investigator.

Both detectives, Cassel and Mitchell, were not carrying weapons. And they were not dressed in police uniform, but in polo shirts. I believe Detective Mitchell stated he was wearing a pair of khakis and that Cassel he believes was wearing camouflage pants.

Upon arrival, [Trunk] was directed into the interview room at approximately a little past 3:00 a.m. The formal questions and answers began at 3:11 a.m.

Mitchell said [Trunk] was not in custody; therefore, no *Miranda*[3] warnings were necessitated.

He informed [Trunk] he was free to leave at any time. Just to let him know or Detective Cassel know if he didn't want to talk. [Trunk] said he did.

The door to the interview room was locked, but a key was in the lock. So at any time, [Trunk] could get up and walk out.

[Trunk] was seated approximately two feet from the door with his back to the door across a desk where both detectives were located.

[Trunk] gave a statement. Detective Mitchell exited the room at that time after the statement was complete and discussed [Trunk's] discrepancies with other people in the hallway.

He made a copy of the conversation – of the Q and A and returned to the room, the interview room, and gave a copy of the statement to [Trunk] to review for accuracy. At which time, [Trunk] signed and dated each page.

For approximately one hour, [Trunk] was confronted with apparent inconsistencies.

The detective reopened the statement for additional questions for approximately 45 minutes after that.

At this point, the detective confronted [Trunk] with the inconsistencies. At which time, [Trunk] refused to talk any

_____

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

further and put his head down. This was at approximately 6:00 a.m.

Detective Mitchell then left the room and no further questioning occurred.

Please note that at approximately 5:00 a.m., [Trunk] was offered the opportunity to use the bathroom, to receive food and water, yet he declined.

At 6:00 a.m., [the] detective was apprised-of an outstanding unrelated criminal warrant. At which point, [Trunk] was detained.

*Id.* at 78-81.

Ultimately, the trial court denied Trunk's motion to suppress both his statement to police and any physical evidence emanating from the warrants he challenged. Thereafter, the jury convicted Trunk of the above referenced charges and the trial court sentenced him to an aggregate term of two consecutive terms of life imprisonment without the possibility of parole.

Trunk filed a post-sentence motion challenging both the weight and the sufficiency of the evidence and the sentence imposed. The trial court denied Trunk's post-sentence motion and Trunk filed a timely direct appeal. However, this Court dismissed the appeal for failure to file a brief. Trunk received post-conviction relief in the form of the reinstatement of his direct appeal rights. Hence, Trunk filed the instant, *nunc pro tunc*, appeal and court-ordered Pa.R.A.P. 1925(b) statement. Appointed counsel filed an ***Anders*** brief.[4] The trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

_____

[4] On December 2, 2019, Trunk filed a *pro se* response to counsel's ***Anders*** brief requesting the appointment of new counsel and seemingly alleging that

Counsel's **Anders** brief identifies the following issues, which we set forth verbatim:

> 1. The evidence at trial was not sufficient to convict [Trunk] of the first degree murder of Kevin Smith and Janice Trunk, the third degree murders of Kevin Smith and Janice Trunk and possessing an instrument of crime. There was no eyewitness testimony to identify [Trunk] as the killer. Further, the Commonwealth's estimation of the timeline for the events in question was contradicted by witness testimony about when the crime occurred. Additionally, the video evidence presented did not conclusively identify [Trunk] as being near the crime scene during the murder. Finally, the testimony of Lee Burke which alleged that [Trunk] admitted to the murders was not credible.
>
> 2. The verdict was against the weight of the evidence. There was no eyewitness testimony to identify [Trunk] as the killer. Further, the Commonwealth's estimation of the timeline for the events in question was contradicted by witness testimony about when the crime occurred. Additionally, the video evidence presented did not conclusively identify [Trunk] as being near the crime scene during the murder. Finally, the testimony of Lee Burke which alleged that [Trunk] admitted to the murders was not credible.
>
> 3. The trial court erred in denying [Trunk's] motions to suppress his statement to police as they were obtained without **Miranda** Warnings and while [Trunk] was under custodial interrogation.
>
> 4. The trial court erred in denying [Trunk's] motions to suppress evidence obtained from search warrants. These

_____

his trial counsel was ineffective for failing to address his mental health at the time of the crimes charged, including his inpatient commitment from June 2016 until July 2016. We note that Trunk's ineffectiveness of counsel claim is not instantly cognizable on direct appeal. This Court denied the relief requested in Trunk's *pro se* response via a *per curiam* order on December 13, 2019.

warrants were not sufficient for probable cause and overly broad in their requests.

***Anders***' Br. at 7. Defense counsel presents his desire to withdraw as a fifth issue on appeal. However, we consider counsel's petition to withdraw in conjunction with the four substantive issues presented.

Before we address the substance of counsel's ***Anders*** brief, we must first determine whether counsel's request to withdraw meets certain procedural requirements. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). An ***Anders*** brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the ***Anders*** brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Orellana***, 86 A.3d 877, 880 (Pa.Super. 2014) (citation omitted). If counsel has satisfied these

requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." *Commonwealth v. Dempster*, 187 A.3d 266, 271 (Pa.Super. 2018) (*en banc*) (quoting *Anders*, 386 U.S. at 744).

Here, in the *Anders* brief, counsel provides a procedural and factual history of the case, with citations to the record, discusses the issues arguably supporting the appeal, and explains why counsel concludes those issues are frivolous. *Anders* Br. at 8-18. Counsel served a copy of the *Anders* brief upon Trunk, and his letter to Trunk advised Trunk that he could raise any additional issues before this Court *pro se* or with private counsel. The *Anders* brief satisfies the necessary requirements. We will therefore address the issues counsel has identified.

The first issue counsel identifies in the *Anders* brief is a challenge to the sufficiency of the evidence supporting Trunk's convictions. Counsel maintains that such a challenge is frivolous because the Commonwealth presented more than sufficient evidence to support the conviction. We agree.

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 217 A.3d 1254, 1256 (Pa.Super. 2019) (quoting *Commonwealth v. Bradley*, 69 A.3d 253, 255 (Pa.Super. 2013)). We review the evidence *de novo*, but do not substitute our weighing of the evidence for that of the fact-finder, who is free to believe all, part, or none of the evidence.

*Commonwealth v. Hall*, 199 A.3d 954, 960 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1028 (Pa. 2019). So long as the prosecution presented evidence of each element of the crime, we will not find the evidence insufficient unless it is "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Miller*, 217 A.3d at 1256.

As a prefatory matter, we note that in order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* at 344 (citation omitted) (holding appellant's sufficiency claim waived where appellant "failed to specify which elements he was challenging in his Rule 1925(b) statement").

Here, Trunk failed to specify which of the elements of first-degree murder, third-degree murder, or possession of an instrument of crime he claims were not supported by sufficient evidence. Therefore, his sufficiency claim is waived and any appellate challenge to the sufficiency of the evidence is frivolous. In any event, even if it were not waived, his sufficiency claim is also frivolous when considered on the merits.

"To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill." ***Commonwealth v. Williams***, 176 A.3d 298, 306-07 (Pa.Super. 2017) (citation omitted). "A jury may infer the intent to kill 'based on the accused's use of a deadly weapon on a vital part of the victim's body.'" ***Id***. at 306-07 (citation omitted).

To obtain a conviction for third-degree murder, the Commonwealth must prove beyond a reasonable doubt two elements: (1) that the defendant killed another person, and (2) that the defendant did so with malice aforethought. ***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013). Malice is present where there is "not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty . . . ." ***Id***. (citation omitted).

The offense of possessing an instrument of crime occurs when a person "possess[es] any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a).

Here, the trial court properly determined that substantial circumstantial evidence supported Trunk's convictions:

> Viewed in the light most favorable to the Commonwealth, the evidence demonstrated beyond a reasonable doubt that [Trunk] committed the charged offenses. He exhibited a growing animus toward his mother prior to the killings. He illegally obtained a 9 millimeter firearm the day before. He shot the victims in the head. His statement to investigators and other evidence placed him at the scene of the crime

around the time of the killings. The bullets retrieved from the victims were fired by a 9 millimeter firearm. Although the weapon was never found, [Trunk] had a friend drive him from Norristown to Philadelphia shortly after the killings, during which time he was in possession of a backpack. The backpack appeared to have something in it on the ride to Philadelphia. [Trunk] left the vehicle for a few minutes and upon his return to Norristown the backpack appeared empty. [Trunk] did not mention the trip to Philadelphia hours later when discussing with investigators his whereabouts on the night of the killings. [Trunk] also denied to police that he possessed a firearm. The evidence, therefore, sufficed to demonstrate that [Trunk] committed the charged offenses and he is not entitled to relief on his challenge to the sufficiency of the evidence.

Trial Ct. Op. 8/7/19, at 7.

Because the prosecution presented some evidence of every element of the crimes charged, the evidence was sufficient. *See Miller*, 217 A.3d at 1256. There is no reasonable basis in fact or law on which to argue otherwise. The sufficiency claim is wholly frivolous.

The second issue presented in counsel's *Anders* brief consists of a challenge to the weight of the evidence. Trunk claims that his convictions were contrary to the weight of the evidence because there was no eyewitness testimony or video evidence at trial that could place him at the scene of the murder. He also calls into question the credibility of witness Lee Burke. Trunk presented his weight claim in a post-trial motion, which the trial court denied. *Anders* counsel contends that the record does not support Trunk's weight of the evidence claim and it is thus frivolous.

When reviewing a challenge to the weight of the evidence, we review "the trial court's exercise of discretion." *Commonwealth v. Johnson*, 192

- 11 -

A.3d 1149, 1152-53 (Pa.Super. 2018) (quoting ***Commonwealth v. Hicks***, 151 A.3d 216, 223 (Pa.Super. 2016)). A trial court may not vacate a verdict on weight-of-the-evidence grounds unless the verdict "is so contrary to the evidence as to shock one's sense of justice." ***Id***. at 1153 (quoting ***Hicks***, 151 A.3d at 223). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Cramer***, 195 A.3d 594, 600 (Pa.Super. 2018) (quoting ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa.Super. 2015)). The fact-finder also has the responsibility of "[r]esolving contradictory testimony and questions of credibility." ***Id***. (quoting ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa.Super. 2000)). We give great deference to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." ***Id***. (quoting ***Talbert***, 129 A.3d at 546).

In the instant case, the trial court was well within its purview when it rejected Trunk's weight challenge. ***See Cramer***, 195 A.3d at 600. Indeed, as noted above, the evidence showed that Trunk harbored substantial hostility toward the victims, obtained a gun shortly before the murders, tried to dispose of the murder weapon shortly after the murders, and lied to police officers regarding both his acquisition of a gun and his whereabouts on the night in question. Hence, we perceive no reasonable basis on which to argue that the trial court abused its discretion by concluding that Trunk's convictions did not "shock one's sense of justice" and were not contrary to weight of the evidence.

*See Johnson*, 192 A.3d at 1152-53. Thus, Trunk's second issue, as presented in counsel's *Anders* brief, is also wholly frivolous.

In the third issue set forth by *Anders* counsel, Trunk contends that the trial court erred by failing to suppress his statement to police, made at the police station, without *Miranda* warnings. Specifically, Trunk maintains that he gave his statement while under "custodial interrogation" and therefore the trial court should have suppressed it. Defense counsel avers that this claim is frivolous because that the record does not support Trunk's assertions.

Our standard of review in addressing a challenge to the denial of a suppression motion is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. McClellan*, 178 A.3d 874, 880 (Pa.Super. 2018) (quoting *Commonwealth v. Jones*, 121 A.3d 526-27 (Pa.Super. 2015)).

"*Miranda* warnings are required only when a suspect is in custody." *Commonwealth v. Pakacki*, 901 A.2d 983, 987 (Pa. 2006) "A person is in custody for *Miranda* purposes only when he 'is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.'" *Id*. at 987-88 (citation omitted). Further,

> [I]n determining whether an individual was in custody, the 'ultimate inquiry is . . . whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. The question of custody is an objective one, focusing on the totality of the

circumstance, with due consideration given to the reasonable impression conveyed upon the person being questioned.

***Commonwealth v. Boczkowski***, 846 A.2d 75, 90 (Pa. 2004) (citations omitted)

Additionally, factors to consider in determining whether an individual has been in custody include: "the basis for detention; its length; its location; whether the suspect was transported against his or her will; how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened, or used force; and the investigative methods employed to confirm or dispel suspicions." ***Commonwealth v. Mannion***, 725 A.2d 196, 200 (Pa.Super. 1999) (citation omitted). ***See Commonwealth v. Yandamuri***, 159 A.3d 503, 518 (Pa. 2017) (holding defendant was not in "custody" for purposes of ***Miranda*** when defendant voluntarily accompanied officers to the police station, the officers did not appear in uniform nor brandish weapons, and the defendant was not restrained). ***But see Commonwealth v. DiStefano***, 782 A.2d 574, 580 (Pa.Super. 2001) (holding defendant was in custody for purposes of ***Miranda*** where, *inter alia*, police questioned the defendant for 11 straight hours at the police barracks, the interview turned accusatory five hours before concluding, and the defendant told officers he wanted to leave the barracks but officers told him he could not).

In this case, the trial court determined that Trunk was not in custody when he made his statement to Detective Mitchell at the police station for several reasons. First, Trunk voluntarily accompanied Detective Wittenberger

to the station and was not physically restrained in handcuffs. *See Mannion*, 725 A.2d at 200; *Yandamuri*, 159 A.3d at 509. Further, Detective Wittenberger was not wearing his police uniform nor did he brandish his weapon. *See id*. The vehicle used for transport was not a police vehicle with a "cage" restraint in the backseat. *See id*.

The court also considered the fact that Trunk was not initially considered a suspect and that Officer Mitchell told Trunk he could leave the police station at any time, as weighing in favor of not finding him in custody. *See Mannion*, 725 A.2d at 200. In addition, the total duration of questioning lasted 3 hours, including several breaks, and Trunk was offered food and drink. *See id*. Moreover, once Trunk indicated he no longer wished to continue, the officers ceased questioning him immediately. *See id*.; *DiStefano*, 782 A.2d at 580.

Our review of the record supports the trial court's determinations and we perceive no reasonable basis on which to argue that Trunk was in custody at the time he made his statement at the police station. *See Boczkowski*, 846 A.2d at 90. There is thus no basis to argue that Trunk was subject to a custodial interrogation such that officers should have given him *Miranda* warnings. *See Pakacki*, 901 A.2d at 987. Hence, the third issue presented in counsel's *Anders* brief also warrants no relief. *See McClellan*, 178 A.3d at 880.

In the fourth and final issue presented in counsel's *Anders* brief, Trunk challenges the probable cause supporting several search warrants. During Trunk's suppression hearing, he initially presented a blanket challenge to all

- 15 -

search warrants issued in this case. However, he ultimately dropped all challenges except for those concerning the search warrant for his phone records (identified in evidence as CS-1), his backpack (CS-4), and his Facebook account information (CS-6). Further, Trunk indicated that if the search warrant supporting the seizure of his backpack were deemed proper, then he would also abandon his claim regarding the Facebook information because that information was seized from his backpack. The trial court determined that the search warrants at issue were supported by probable cause.

A search warrant must be supported by probable cause in order to be valid. **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012). Probable cause exists where:

> the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. In considering an affidavit of probable cause, the issuing magistrate must apply the "totality of the circumstances test" which requires her to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. A court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause.

*Id*. (citations and quotations omitted).

Further, we accord deference to a magistrate's finding of probable cause, as probable cause is based on a finding of the probability of criminal

- 16 -

activity, not a prima facie showing. ***Commonwealth v. Arthur***, 62 A.3d 424, 432 (Pa.Super. 2013). Moreover, when determining whether the warrant was issued upon probable cause, we must limit our inquiry to the information contained within the four corners of the affidavit presented in support of probable cause. ***Id***.

In this case, the trial court begins by noting that Trunk's Rule 1925(b) statement fails to specify what evidence Trunk argues was improperly seized due to search warrants that lacked the requisite probable cause. Nevertheless, the trial court concluded, in light of the totality of the circumstances, the issuing authorities had sufficient probable cause to issue search warrants for Trunk's cell phone and backpack. ***See Johnson***, 42 A.3d at 1031.

We conclude that the record provides no reasonable basis on which to challenge the warrants. A review, within the four corners of the search warrants in question, reveal that the issuing authorities had ample evidence upon which to find that there was a fair probability that contraband would be found. ***See Arthur***, 62 A.3d at 432. Thus, Trunk's fourth issue is also wholly frivolous.

In summary, we conclude that the issues raised in counsel's ***Anders*** brief are frivolous, and our independent review of the record has not uncovered any non-frivolous issue. We therefore find the appeal wholly frivolous, affirm the trial court's judgment of sentence, and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/12/20