J-S37006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HERNANDO C. ROSA | : | No. 2568 EDA 2019 |

Appeal from the Order Entered July 26, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001458-2019

BEFORE:  SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 1, 2020**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Philadelphia County granting the pretrial suppression motion filed by Appellee, Hernando C. Rosa.  After careful review, we reverse and remand for further proceedings.

The trial court summarized the factual and procedural history of this case as follows:

> On January 24, 2019[,] around 9:00 p.m., Officer Jeremy Olesik ("Olesik") and his partner were patrolling the area of 6100 Delancy [Street] in Philadelphia.  Olesik described that particular area as residential and generally "pretty quiet."  On that date, Olesik was assigned to a "victor unit," which "basically, addresses gun violence, robberies, burglaries, priority calls, stuff like that."  Olesik also explained that part of his responsibility in that unit is to be "proactive," stop people, and initiate arrests.
>
> Olesik testified that on January 24, 2019, he was driving his marked patrol vehicle westbound on Delancy [Street] (a one-way street) when he observed a grey 2009 Chevy Malibu with the

license plate "KDK-8933" pull onto the sidewalk. The officer explained that the vehicle pulled onto the north side of Delancy [Street], where vehicles are not permitted to park. He further stated that the driver paused momentarily before pulling back onto Delancy [Street] and fail[ed] to activate her turn signal. On cross-examination, Olesik stated that he did not notice the vehicle until he was driving on the 6100 block of Delancy [Street]. He also explained that the officers followed the vehicle for about one block before activating their lights and sirens and stopping the vehicle for investigation.

Conversely, the operator of the vehicle, Dalina Hayes ("Hayes"), testified that she did activate her turn signal before driving off the sidewalk and that the officers were following her for about three blocks. Hayes believed that the officers were following her because "they made every turn she made" and did not pass her when she stopped on Delancy [Street]—despite the fact that the officers had room to do so. Specifically, Hayes testified:

> So that evening, I was traveling westbound on Pine Street. I approached the stop sign. I made a complete stop. As I continued to cross over 60th Street, the police officers were coming from west, I believe. They made a right behind me. I got to the next stop, which was 61st and Pine. I made a right turn. They made a right turn. I made a left onto Delancy. They made a left onto Delancy.
>
> Once I got onto Delancy, I realized I was being followed. I, actually, got to my destination, so I pulled over to the left side of the curb where you're not supposed to park.
>
> I pulled behind another car who was parked and had their brake lights on. I pulled up. As soon as I pulled up, I realized the cop stopped in the middle of the street and did not pass me. So I put my turning signal on to get back . . . . into traffic to go find a parking space. As I got to the corner of 62nd and Delancy, I put my signal on to make a left, also. He then put his lights on and pulled me over.

- 2 -

Hayes also explained that she was very "tense" and assumed the officers were going to pull her over because she had tinted windows.

Upon stopping the vehicle, Olesik observed [Appellee], who was seated in the front passenger seat, "make a movement towards the front of the vehicle. . . . He leaned toward the glove box area. I couldn't see what he was doing with his hands, but his body was moving towards that area. That's all I could see from my angle." Olesik further elaborated, explaining that he saw [Appellee] "lean forward[] towards the front of the vehicle" but he could not see what [Appellee] was doing with his hands, legs, or head. The officers exited their patrol car. Olesik approached the driver's side of the vehicle and his partner approached [Appellee's] side of the vehicle.

Olesik testified that he smelled the "fresh odor of marijuana inside the vehicle." However, Hayes testified that no one smoked marijuana in her vehicle and that her vehicle did not smell like marijuana. Hayes cooperatively produced her license, registration, and proof of insurance for Olesik. The officers then asked [Appellee] for "his information." [Appellee] told the officers that he did not have Pennsylvania ID and stated that his name was Christopher Hayes and that his date of birth was June 5, 1993. The officers searched the name "Christopher Hayes" but the search "didn't come back to anybody." At that point, the officers removed [Appellee] from the vehicle, patted him down, and placed him in the rear of their police car "to determine his identity." [Appellee] also provided the officers with the names "Cortez Rosa," with the birthdate 6/5/93 and "Hernando Rosa," also with the birthdate 6/5/93. After searching both names the officers discovered that there was an outstanding arrest warrant for [Appellee], for gun violations in a different county. [Appellee] was then handcuffed and arrested.

After arresting [Appellee], the officers went back to Hayes' vehicle and searched the glove box, where they recovered a black firearm, [Appellee's] wallet, and [Appellee's] identification. The officers also searched the vehicle's center console, where they recovered a small glass tube with a red cap, which contained a small amount of marijuana. Olesik testified that the glass tube was sealed with a lid and only contained about $10 worth of marijuana. No other paraphernalia was recovered from the vehicle. The officers did not issue a traffic citation for Hayes'

temporary parking on the sidewalk, her alleged failure to signal, or for the marijuana that was recovered from the vehicle.

Based on these facts, [Appellee] was arrested and charged with carrying a firearm without a license, carrying firearms in public in Philadelphia, furnishing false identification to a law enforcement officer, and possessing a prohibited firearm.[1]  On April 26, 2019, [Appellee] filed a motion to suppress.  On July 26, 2019, following a hearing, this court granted that motion, stating:

> THE COURT: Now, that's where I am right there just about the initial stop and then everything else. . . .  I think [Hayes] signaled.  I think she did the signal.  That's why I said, for me, it's that initial stop.  I'm not saying that all the other things are not true, but I have to suppress as fruit of the poisonous tree.  Because I think the initial stop - that's the problem right there.  And I do believe her that she did signal, and it was just not enough.
>
> * * *
>
> I reserve the right to supplement the record with additional findings of facts and conclusions of law.

(N.T. 7/26/19, at 72, 76).

> [1] 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 6108, 18 Pa.C.S.A. § 4914, and 18 Pa.C.S.A. § 6105(a)(1), respectively.

Trial Court Opinion, 2/26/20 at 1-4 (some internal cites to the record omitted).

The Commonwealth filed an interlocutory notice of appeal on August 26, 2019.[1]  The Commonwealth and the trial court complied with Pa.R.A.P. 1925.

---

[1] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution.  **Commonwealth v.**

On appeal, the Commonwealth presents the following issue for our review: "Did the lower court err in concluding that the police were not justified in stopping the car in which [Appellee] was riding as a passenger and in which they found a firearm?" Commonwealth's Brief at 4. The Commonwealth notes that the trial court "has since recognized that the police acted lawfully in stopping the car and that it erred in ruling otherwise. Because the police, in fact, were justified in stopping the car, the lower court's suppression order should be reversed." *Id.* at 13.

When considering a Commonwealth appeal from an order granting a defendant's motion to suppress, the following applies:

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the [. . .] record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the

---

*Petty*, 157 A.3d 953, 954 n.1 (Pa. Super. 2017); Pa.R.A.P. 311(d). The Commonwealth included the required certification in its notice of appeal.

weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

In the case *sub judice*, Appellee filed a motion to suppress the gun found in the vehicle. In his motion to suppress, Appellee made the following assertions:

> 2. The arrest of [Appellee] was unlawful in that it was without probable cause and that it violated his Pennsylvania and United States Constitutional rights.
>
> * * *
>
> 3. On or about the time of [Appellee's] illegal arrest, a search and seizure was conducted by members of the Philadelphia County Police Departments or persons working in conjunction with them. Said search and seizure and the fruits thereof should be suppressed for one or more of the following reasons:
>
> > (a) Said search and seizure was the fruit of [Appellee's] illegal arrest;
> >
> > (b) Said search and seizure was conducted without a search warrant;
> >
> > (c) Said search and seizure was conducted without the consent of [Appellee]; and,
> >
> > (d) Said search and seizure was conducted without probable cause.

Motion to Suppress, 4/26/19, at 1-2.

At the suppression hearing, Appellee's counsel made the following argument:

- 6 -

The basis of our argument is that it was—or the Commonwealth, through its agents, the police officers, in this case, lacked any and all reasonable suspicion to search—to stop, search and remove my client from the vehicle and search, then, the vehicle.

In the vehicle, was found—a firearm was found, and I'm asking Your Honor to suppress that firearm as a result of the illegal stop and search.

In addition, Your Honor, it's our argument that while my client was in the custody of the police, he—the police officers elicited a statement from him, so I'll ask for that to be suppressed as well.

N.T., 7/26/19, at 3.

At the end of the hearing, the trial court made the following ruling:

I think she signaled. I think she did the signal. That's why I said, for me, it's that initial stop. I'm not saying that all the other things are not true, but I have to suppress as fruit of the poisonous tree. Because I think the initial stop – that's the problem right there. And I do believe that she did signal, and it was just not enough.

* * *

And I agree that everything else happened but the problem is the initial stop. But I do think that that was his gun, everything is illegal – all of that, but I do have to suppress it because of the that [sic] initial stop.

N.T., 7/26/19, at 77.

In its subsequent Pa.R.A.P. 1925(a) opinion, however, the trial court

explained:

In the case at bar, despite its initial ruling, this court concedes that [Officer] Olesik lawfully stopped Hayes' vehicle;[2] however, this court nonetheless finds that it properly granted [Appellee's] motion to suppress. However, the record contains no express findings of facts or conclusions of law relating to this court's additional reasons for granting [Appellee's] motion to suppress.

Thus, this court respectfully requests that the Superior Court remand this matter for an issuance of further findings of facts and conclusions of law.

> [2] Pennsylvania law unequivocally mandates that officers have probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense. Commonwealth v. Harris, 176 A.3d 1009, 1019 (Pa. Super. 2017). Further, 75 Pa.C.S.A. § 3703 states "no person shall drive any vehicle except a human-powered vehicle upon a sidewalk or sidewalk area except upon a permanent or duly authorized temporary driveway." Here, both Olesik and Hayes testified that Hayes briefly drove onto the sidewalk. Even though Hayes' actions constitute a minor traffic violation, Oliesik had probable cause to stop the vehicle on that basis.

Trial Court Opinion, 2/26/20, at 4-5.

We agree with the conclusion reached by the trial court as outlined in its Pa.R.A.P. 1925(a) opinion. The evidence presented at the suppression hearing established that Hayes had driven onto the sidewalk, in violation of 75 Pa.C.S. § 3703.[2] Thus, Hayes committed a traffic code violation, and Olesik had probable cause to stop the vehicle on this basis. **See Harris**, 176 A.3d at 1019 ("Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation,

---

[2] Section 3703(a) of the Motor Vehicle Code provides: "Except as provided in subsection (b) [pertaining to mobility-related devices for persons with disabilities] or (c) [related to electric personal assistive mobility device (EPAMD)], no person shall drive any vehicle except a human-powered vehicle upon a sidewalk or sidewalk area except upon a permanent or duly authorized temporary driveway." 75 Pa.C.S. § 3703(a).

even if it is a minor offense."). Therefore, the initial stop was lawful. The trial court erred at the time of its ruling at the suppression hearing in concluding that the gun should be suppressed because it was obtained as a result of an unlawful stop. Accordingly, we reverse the trial court's ruling granting Appellee's motion to suppress the gun on this basis. [3]

Order reversed. Matter remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/01/2020

---

[3] We note that the trial court requests that the case be remanded to it "for an issuance of further findings of facts and conclusions of law" in support of its assertion that despite its initial conclusion that the vehicle was not lawfully stopped, it nonetheless finds that "it properly granted [Appellee's] motion to suppress." Trial Court Opinion, 2/26/20 at 5-6. Our review is limited to the specific issue raised on appeal by the Commonwealth as outlined above.